# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARC I. SHULMAN,

      Plaintiff,                                Case No. 11-10983
                                                      Hon. Gerald E. Rosen

v.

BARBARA CZERSKA, M.D.

      Defendant.

_____/

## OPINION AND ORDER DENYING
## PLAINTIFF'S OBJECTION TO DEFENDANT'S NOTICE OF REMOVAL
## AND ORDERING SUPPLEMENTAL BRIEFING

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____July 7, 2011_____

PRESENT:  Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I.  INTRODUCTION

This matter is presently before the Court on Plaintiff's objection to removal and Defendant's motion to dismiss.  Plaintiff Marc I. Shulman filed a complaint for tortious conduct against Defendant Barbara Czerska in Oakland County Circuit Court on December 1, 2010.  Defendant removed the case to this Court based on diversity between the parties.  Plaintiff filed his objection to the removal, alleging that complete diversity between the parties does not exist.  *See* 28 U.S.C. § 1332(a).  Defendant has filed her own motion, alleging dismissal of this complaint is proper based on lack of personal

jurisdiction, improper venue, and failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(2, 3, 6).

Having reviewed the parties' motions, supporting briefs, and the entire record of this matter, the Court finds that the pertinent facts and legal contentions regarding diversity are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this matter.  Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), the Court will decide Plaintiff's objection to removal "on the briefs."  This Opinion and Order sets forth the Court's rulings.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff alleges that he and Defendant were co-founders and co-majority shareholders of Stem Cell Growth, Inc. (SCGI), a Delaware Corporation involved in stem cell research.  Plaintiff served as the president and CEO of SCGI, and Defendant served as SCGI's medical director and treasurer.  In addition to their business relationship, both parties admit to having an intimate personal relationship.

Plaintiff alleges by sworn affidavit that he and Defendant began discussing the formation of SCGI in 2007 in Michigan, while both parties resided in Michigan.  Plaintiff claims that he left an executive position as vice president of a major corporation in order to pursue with Defendant the development of SCGI and its for profit business relationships with the University of Miami and others.  Plaintiff alleges that on November

2

19, 2009, the University of Miami and other principals reached an agreement with SCGI to fund SCGI's research.

On April 22, 2010, Plaintiff and Defendant shared a hotel room in Chicago while attending a medical conference regarding the business development of SCGI.  While in the hotel room, Defendant discovered certain electronic messages written by Plaintiff to a Florida-based SCGI investor and forwarded these messages, along with Defendant's own comments regarding the messages, to the other shareholders.[1]  The recipients of the initially forwarded messages included Plaintiff, the Florida investor, University of Miami doctors, and Mr. Sandford Passer, an attorney in Michigan.  Other than Plaintiff, five of the remaining six recipients were based in Florida.  The forwarded messages, along with Defendant's comments, suggested that Plaintiff was intimately involved with the Florida investor.  Although Plaintiff alleges that Defendant initially viewed the messages by unlawfully misappropriating Plaintiff's Blackberry phone, Defendant contends that she received the messages on her own Blackberry phone when Plaintiff unintentionally forwarded them to her.

Plaintiff alleges that the libelous messages sent by Defendant destroyed his reputation and caused the University of Miami doctors to terminate their funding

---

[1]  It is unclear from the parties' briefs whether the initial discovery by Defendant included a single message or multiple messages and whether the messages were e-mail, text messages, or both.  The record shows multiple e-mails being sent between the parties and investors after the initial messages were discovered.

agreement for SCGI, causing Plaintiff a significant loss of future profits. On May 4, 2010, Plaintiff along with Mr. Passer formed Stem Cell Growth, LLC without the support of the Miami doctors.

Although Plaintiff fails to express specific counts in his complaint, his general allegations sound in the intentional tort of libel. Plaintiff seeks a judgment in his favor including in excess of one million dollars in monetary damages, in excess of five million dollars in exemplary and punitive damages, a preliminary restraining order enjoining Defendant from further libeling and/or defaming Plaintiff, and actual costs and attorney fees.

Plaintiff initially filed his complaint in Oakland County Circuit Court on December 1, 2010, and Defendant filed her notice of removal on March 11, 2011. Defendant alleged that she is a citizen of, and domiciled in, Florida. Defendant stated by sworn affidavit that although she had a home in Michigan, she was in the process of selling it, and her intent was to permanently remain in Florida. Defendant moved to Florida in November 2009 and is currently the medical director of the Florida Hospital Heart Transplant Program, which requires her to live within minutes of the hospital in Orlando, Florida. Plaintiff is a citizen of and domiciled in Michigan.

On March 28, 2011, Plaintiff filed his motion objecting to Defendant's notice of removal, stating that complete diversity did not exist. Plaintiff alleges that Defendant still owns a home in Michigan and pays taxes on that home. Plaintiff also claims that the

home is not currently listed for sale.  In addition, Plaintiff alleges that Defendant is still registered to vote in Michigan and voted in the November 2010 election in Michigan. Moreover, Plaintiff asserts that Defendant has not filed an affidavit with the state of Florida to change her domicile to Florida.  Plaintiff also states that Defendant has an active medical license in Michigan, which is registered to her Michigan address.  Finally, Plaintiff alleges that on December 1, 2010, Defendant was driving vehicles registered in Michigan, maintained bank accounts in Michigan, and had a Michigan telephone number.

Defendant argues that she intends to permanently remain in Florida.  Plaintiff was unable to serve his complaint on Defendant in Michigan by regular or certified mail. Defendant states that she has not lived in Michigan since November 2009, when she moved to Florida.  She also asserts that while she owns a home in Michigan, that home is unoccupied and under repair, and is not habitable at the moment.  She states that once repairs are completed, the house will be placed on the market for sale.  Defendant denies voting in Michigan for the November 2010 election.  Additionally, she alleges that her bank account is in Orlando, Florida, as well as her personal physician.  She also states that she has signed an employment contract with the hospital requiring her to remain in Florida.  Finally, Defendant rents a condo in Orlando, Florida, so she can remain close to the hospital.

Both parties have submitted signed affidavits supporting their claims and residency status.  Defendant has responded to Plaintiff's objection to removal, and Defendant's motion to dismiss has been fully briefed by the parties.

## IV.  ANALYSIS

**A.**     **Complete Diversity Exists Between the Parties**

To establish jurisdiction with this Court under 28 U.S.C. § 1332, there must be complete diversity of citizenship among the parties.  *Bateman v. E.I. DuPont De Nemours & Co.*, 7 F. Supp. 2d 910 (E.D. Mich. 1998).  Under 28 U.S.C. § 1332, citizenship is determined at the time the complaint is filed and is synonymous with domicile.  *Kaiser v. Loomis,* 391 F.2d 1007, 1009 (6th Cir. 1968).  After removal, a plaintiff may challenge the allegations of the removal notice, and the burden is on the defendant to prove the existence of complete diversity.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Aetna Cas. & Sur. Co. v. Hillman* 796 F.2d 770, 775 (5th Cir. 1986).  Domicile requires an actual physical presence in the state and an intention to remain there. *Bateman*, 7 F. Supp. 2d at 911.  One's domicile can change, as long as there is an intent to remain in the new location indefinitely.  *Id.*  Each case has to be determined on a fact-by-fact basis by examining certain criteria: location of real and personal property, taxes, voting precincts, driver's licenses, bank accounts, location of club and church memberships, location of employment, living situation, social organizations, and location of physicians, dentists, lawyers, etc.  *Id.*

Here, Defendant states by sworn affidavit that she intends to remain in Florida indefinitely.  In November 2009, Defendant left her home and career in Michigan to take a high-level position at a Florida hospital.  To do so, she was required to sign an employment contract that requires her to remain in the Orlando area.[2]  Plaintiff was unable to serve Defendant at the address in Michigan because Defendant was no longer living there.  Defendant states that the Michigan home is unhabitable, and until repairs are completed she cannot place it on the market, but intends to do so.  Defendant also rents a condo minutes from the Florida hospital, and had to submit the lease as proof of residence to the federally-linked nonprofit organization that oversees organ transplants, which she handles at the hospital.  Defendant also states that she has a bank account in Florida.  In addition, she alleges that she participates in community and professional activities in Orlando.  Defendant's physician is also located in Orlando and she is currently under medical care in Miami for an eye condition.

Although Plaintiff alleges that Defendant voted in the November 2010 election, he provides no proof other than his affidavit, which simply states "[u]pon information and belief, defendant voted in Michigan in the November 2010 elections."  (Pl.'s Aff. 11, March 28, 2011.)  Even assuming that Defendant did vote in Michigan, this election took place before the December 1, 2010 complaint was filed, and it is therefore irrelevant to

---

[2] Although there is no date next to the signatures on the employment contract, the electronic document date is September 8, 2009, and the date of handwritten changes made to the document is September 16, 2009, indicating the contract was most likely fully negotiated on or about September 16, 2009.

7

the Court's analysis. *See Kaiser*, 391 F.2d at 1009.  There is no evidence that Defendant frequently comes back to Michigan, and she states in her affidavit that she has no family currently living there.  In addition, while Defendant has not filed a declaration in Florida to change her domicile, Defendant has correctly argued that such a filing is optional.  *See* Fla. Stat. § 222.17.  Plaintiff also asserts that although Defendant is practicing in Florida, she continues to maintain an active medical license in Michigan.  The relevant fact for this Court, however, is that Defendant was employed and actively practicing in Florida, not Michigan, on the date the complaint was filed.

Taking into consideration the above factors, this Court finds that Defendant's physical presence in Florida, Florida condominium rental, and indefinite employment contract as the medical director of the Florida Hospital Heart Transplant Program sufficiently establish her intent to remain in Florida.  Therefore, the Court concludes that Defendant is domiciled in Florida.  *Bateman*, 7 F.Supp. 2d at 911.  Because Plaintiff is domiciled in Michigan and Defendant is domiciled in Florida, complete diversity of citizenship exists, and the subject matter jurisdiction is proper for removal of this case to this Court.

**B.**     **The Court Lacks Sufficient Facts Regarding Personal Jurisdiction**

Defendant challenges the Court's personal jurisdiction over her in this matter.  A removing party does not waive challenges to personal jurisdiction pursuant to Fed. R.

8

Civ. P. 12(b)(2) by removing a state action to federal court.  *See Freeman v. Bee Mach.*

*Co.*, 319 U.S. 448, 451, 63 S.Ct. 1146, 1148 (1943).  Although Plaintiff has alleged that

the parties discussed and formed SCGI while both of them resided in Michigan, neither

party has provided any business documentation related to the formation and development

of SCGI or its transactions with the Florida investors.  For this reason, and others, the

Court is unable to determine the extent of any connection or relationship between SCGI

and Michigan or between Defendant and Michigan, and is unable on the present record to

determine personal jurisdiction.  Therefore, the Court finds that limited discovery and

document production on the issue of personal jurisdiction would aid the Court in

rendering a proper decision on Defendant's motion to dismiss.

## V. <u>CONCLUSION</u>

 For the reasons stated in the above opinion, the Court finds that complete diversity

exists between the parties and that additional discovery and briefing is necessary, limited

to the issues surrounding personal jurisdiction.

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's objection [Dkt.

#3] to Defendant's notice of removal is DENIED.

IT IS FURTHER ORDERED that the parties take limited discovery and produce

any documents related to the formation and gestation of SCGI and its transactions with

the Florida investors, as well as any other issues which may reflect upon the Court's

personal jurisdiction over Defendant.  Parties have until August 5, 2011 to complete this

limited discovery and document production.  By August 19, 2011, Plaintiff shall file a

supplemental brief, not to exceed 15 pages, on the issue of personal jurisdiction.

Defendant shall file a response brief, not to exceed 15 pages, by September 2, 2011.

IT IS FURTHER ORDERED that in addition to the issue of personal jurisdiction,

Plaintiff shall address, in the same brief, whether SCGI or Plaintiff himself is the

appropriate injured party in this action.  If Plaintiff believes he is the injured party, he

shall explain whether the alleged defamation injured him as an individual or as a

shareholder of SCGI.

s/Gerald E. Rosen\
Gerald E. Rosen\
Chief Judge, United States District Court

Dated: July 7, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 7, 2011, by electronic and/or ordinary mail.

s/Ruth A.Gunther\
Case Manager\
(313) 234-5137

10